# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

ERIC BROWN,

    Plaintiff,

v.

MARC OGE,

    Defendant.

CIVIL ACTION NO.: 5:15-cv-89

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Second Amended Complaint. (Doc. 29.) For the reasons and in the manner set forth herein, I **RECOMMEND** the Court **DISMISS** Plaintiff's putative claims against medical personnel Meke Conteh. The Court **DIRECTS** the United States Marshals Service to serve a copy of this Order and Documents Numbered 26, 28, and 29 upon Defendant Oge.

## BACKGROUND[1]

Plaintiff is incarcerated at Ware State Prison in Waycross, Georgia. (Doc. 1.) On August 30, 2015, at approximately 9:00 p.m., Defendant Marc Oge slammed Plaintiff's hand in a cell door without provocation on Plaintiff's part. (Doc. 29, p. 1.) Plaintiff was examined in the medical department that evening, and Physician's Assistant Meke Conteh told Plaintiff that his hand was not broken. (Id.) As many as four weeks later, Plaintiff received an x-ray which revealed that his hand was broken. (Id. at p. 2.) He contends "medical" put a splint on his thumb, which was a thin wooden stick and a brown bandage he wore for four to five weeks

---

[1] The Court takes the factual allegations from Plaintiff's Second Amended Complaint and construes them as true, as it must at this stage.

before getting a cast. (Id.) Plaintiff maintains he is in chronic and substantial pain as a result of not getting proper treatment.

In his original Complaint, Plaintiff named Warden Tom Gramiak and CO II Officer Oge as the Defendants. (Doc. 1, p. 4.) However, Plaintiff moved to amend his Complaint on December 14, 2015, to name Edwina Johnson, the Deputy Warden of Care and Treatment, as the only Defendant. (Doc. 4.) Plaintiff stated that he attempted to obtain the names of the officers who were involved in the use of force against him and the denial of medical care but had been unable to do so. (Id.) Thus, he asked that the Court allow Defendant Johnson to remain as a Defendant for the purposes of determining the identity of the proper defendants. (Id.)

On February 18, 2016, the Court granted Plaintiff leave to amend and allowed Plaintiff's claims to proceed against Defendant Johnson, Defendant John Doe Correctional Officer, and Defendant John Doe Medical Personnel. In that Order, the Court concluded that Plaintiff could not establish a claim for monetary relief against Defendant Johnson. (Doc. 8, pp. 8–10.) However, the Court found that, to the extent Plaintiff contended that he has still not received medical relief, he stated a plausible claim against Defendant Johnson for injunctive relief. (Id. at p. 9 (citing Luckey v. Harris, 860 F.2d 1012, 1015–16 (11th Cir. 1988).) Additionally, the Court stated that there was some authority for Plaintiff's proposal to proceed against Defendant Johnson in order to obtain the identity of the two John Doe Defendants. (Id. at p. 8 (citing Satchell v. Dilworth, 745 F.2d 781, 786 (2d Cir. 1984).) Accordingly, the Court ordered the United States Marshal to serve Johnson with the Complaint. (Id. at p. 11.) The Court stated that it "expects that Defendant Johnson and her counsel will cooperatively participate in discovery to expedite the effort to identify those individuals that Plaintiff alleges used excessive force against him and denied his access to medical care." (Doc. 8, p. 10.) Unfortunately, that did not occur.

Following service of the Complaint, Defendant Johnson moved to dismiss all claims against her. (Doc. 12.) Johnson's arguments echoed the Report and Recommendation's conclusion that Plaintiff had not stated any plausible claims for monetary relief against her. (Doc. 12-1, pp. 3–6.) Additionally, Johnson argued that Plaintiff had not and could not assert any injunctive relief claims against her. (Id. at pp. 6–10.) Lastly, Johnson argued that she should not remain in the case for the purpose of Plaintiff obtaining discovery from her. (Id. at pp. 10–19.) Johnson proposed that the Court should instead allow Plaintiff to engage in limited non-party discovery to obtain the names of the John Doe Defendants. (Id. at pp. 19–24.) To that end, Johnson agreed that "she would respond appropriately to any procedurally proper non-party discovery." (Id. at p. 24.)

In response to Johnson's Motion, Plaintiff clarified that he did not intend to assert any claims (monetary or injunctive) against Defendant Johnson. (Doc. 17.) He stated that "Defendant Johnson's only role in this action is to provide discovery so that the plaintiff can properly present upon [sic] his case and correctly also to truly name the defendants, dates, and times." (Id. at p. 3.) Thus, I recommended the Court grant Johnson's Motion to Dismiss, and the Court adopted this recommendation as the opinion of the Court and dismissed Johnson as a named Defendant. (Docs. 22, 27.)

Following the Court's September 23, 2016, Order, Plaintiff filed a pleading entitled "Motion for Complete of Amended Complaint." (Doc. 26.) In this pleading, Plaintiff stated he wished to amend his Complaint to name Defendant Marc Oge as the sole Defendant in this case. (Id.) The Court granted Plaintiff leave to amend his Complaint to name the proper Defendant. (Doc. 27, p. 5.) In so doing, the Court informed Plaintiff he must set forth all claims he intends to pursue in this case and the factual allegations supporting those claims. The Court also

informed Plaintiff that his Second Amended Complaint would be the operative Complaint in this case and that he must fully state all claims he intends to pursue. Further, the Court advised Plaintiff he should not assert claims the Court had already dismissed. (Id. at p. 6.) Additionally, the Court informed Plaintiff that, following the filing of his Second Amended Complaint, the Court would order service upon Defendant Oge and that Defendant Oge would be the only Defendant remaining upon the docket. (Id.) Plaintiff has now filed his Second Amended Complaint. (Doc. 29.)

## STANDARD OF REVIEW

Plaintiff has brought this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R.

Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

In his Second Amended Complaint, Plaintiff contends Defendant Marc Oge slammed Plaintiff's hand in a cell door without provocation on August 30, 2015, causing Plaintiff's hand to be broken.[2] (Doc. 29, p. 1.) Plaintiff contends Meke Conteh, medical personnel at the prison, refused to provide adequate medical attention on this same date because she told Plaintiff his hand was not broken, just swollen, and he should put ice on it. Plaintiff avers that, when he had x-rays taken some two to four weeks later, he learned his hand was broken. (Id. at p. 2.) Plaintiff asserts this delay in treatment caused him substantial pain.

### I. Plaintiff's Putative Claims Against Meke Conteh

In his Complaint, Plaintiff states that Meke Conteh did not provide "adequate medical attention" after Oge slammed Plaintiff's hand in a door. However, Plaintiff does not name Meke Conteh as a Defendant in his Amended Complaint. Additionally, despite the tortured history of this case, Plaintiff did not previously inform the Court he wished to pursue any putative claims against Meke Conteh. In fact, Plaintiff explicitly informed the Court he only wanted to pursue his claims against Defendant Oge. (Doc. 26.) The Court then directed the Clerk of Court to substitute Marc Oge as the only named Defendant—in place of the John Doe Defendants Plaintiff originally named. (Doc. 28, p. 5.) Plaintiff voiced no objection to the Court's directives. Accordingly, because Plaintiff did not inform the Court he wished to pursue claims

---

[2] In Plaintiff's original Complaint, he stated the events giving rise to this cause of action occurred on September 2, 2015. (Doc. 1.) However, in his Second Amended Complaint, Plaintiff states these events occurred on August 30, 2015. (Doc. 29.) Because Plaintiff's Second Amended Complaint is the operative pleading in this case, the Court considers August 30, 2015, as the date the alleged actions occurred.

6

against Meke Conteh, despite having numerous opportunities to do so, the Court should **DISMISS** Plaintiff's putative claims against Meke Conteh.

Even if Plaintiff had informed the Court he wished to sue Meke Conteh, these claims should still be dismissed. Plaintiff questions Meke Conteh's opinion that his hand was not broken but was swollen. Plaintiff's allegations do not reveal that Meke Conteh acted with deliberate indifference to his serious medical needs. Rather, Plaintiff's allegations give rise to, at best, a misdiagnosis of Plaintiff's condition.

In order to state a claim for relief under Section 1983, Plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, Plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 828 (1994). This right to safety is violated when a defendant shows a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id. In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by

a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). As for the subjective component, the Eleventh Circuit Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. "The meaning of 'more than gross negligence' is not self-evident[.]" Goebert, 510 F.3d at 1327.

In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no

constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Center Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Plaintiff fails to set forth sufficient facts to state a claim that Meke Conteh disregarded a medical need with conduct that surpasses gross negligence. Plaintiff concedes that Meke Conteh evaluated his injury and directed treatment by way of icing the injury. (Doc. 29, p. 2.) At most, Plaintiff alleges that Meke Conteh negligently failed to diagnose Plaintiff with having a broken hand. (Id. at p. 3.) The United States Supreme Court has emphasized that mere negligence in providing medical treatment or a difference of medical opinion does not give rise to an Eighth Amendment claim, and medical malpractice does not become a constitutional violation simply because the victim is incarcerated. Estelle, 429 U.S. at 106; see also Kelley v. Hicks, 400 F.3d 1282, 1285 (11th Cir. 2005) ("Mere negligence, however, is insufficient to establish deliberate indifference."); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (negligence in misdiagnosis of pituitary tumor not sufficient for Eighth Amendment claim); Moore v. McNeil, No. 09-22754-CIV, 2009 WL 7376782, at *5 (S.D. Fla. Dec. 7, 2009), *report and recommendation adopted in part*, No. 09-22754-CIV, 2011 WL 304313 (S.D. Fla. Jan. 28, 2011) ("Treatment violates the Eighth Amendment only if it involves something more than a medical judgment call, an accident, or an inadvertent failure. It must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.") (internal punctuation omitted) (quoting Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980), and Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). The purpose of the subjective requirement of the deliberate indifference test is "to prevent the constitutionalization

of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." Rouster v. Cty. of Saginaw, 749 F.3d 437, 446–47 (6th Cir. 2014) (emphasis supplied) (quoting Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001)); Payne v. Groh, No. CIV. 1:99CV83, 1999 WL 33320439, at *5 (W.D.N.C. July 16, 1999) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved."). Plaintiff's allegations, even when accepted as true and construed in his favor, simply do not rise to the level of a constitutional violation. Additionally, Plaintiff makes no plausible allegation that any delay in receiving what he deems to be proper medical treatment exacerbated his condition. These failures provide additional grounds for the Court to **DISMISS** Plaintiff's putative deliberate indifference claims against Meke Conteh.

## II.     Plaintiff's Claims Against Defendant Oge

Plaintiff's claims against Defendant Oge also give rise to the Eighth Amendment. The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In

order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff has made sufficient allegations to state a plausible claim that Defendant Oge slammed his hand in a cell door and did so without provocation from Plaintiff. This claim survives frivolity review.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** all of Plaintiff's putative claims against Meke Conteh.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

## **REMAINING CLAIM AND DEFENDANT**

Plaintiff's allegations in his Second Amended Complaint arguably state a colorable claim for relief under 42 U.S.C. § 1983 for an excessive use of force against Defendant Oge. Consequently, a copy of Plaintiff's Second Amended Complaint, Documents Numbered 26 and 28, and a copy of this Order shall be served upon Defendant Oge by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## **INSTRUCTIONS REGARDING SERVICE**

Because Plaintiff is proceeding *in forma pauperis*, the undersigned **DIRECTS** the United States Marshal to serve Defendant. Fed. R. Civ. P. 4(c)(3). In most cases, the Marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P.

4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

If the United States Marshal is unable to effect service by mailing a waiver of service to the address provided, the Court hereby **DIRECTS** the Marshal to use reasonable means to locate Defendant and to serve Defendant through these reasonable means, including by personal service. The Marshal shall file the Return of Service on the Court's docket or otherwise update the Court of the attempt to serve Defendant within **forty-five days** of the date of this Order.

## INSTRUCTIONS TO DEFENDANT

**IT IS FURTHER ORDERED** that Defendant is hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendant is further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendant shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

In the event that Defendant takes the deposition of any other person, Defendant is ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendant shall notify Plaintiff of the deposition and advise him that he may serve on Defendant, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendant shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

# **INSTRUCTIONS TO PLAINTIFF**

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant or, if appearance has been entered by counsel, upon his attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendant or his counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendant, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes

of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendant. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses

to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## **ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT**

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion. Plaintiff's case may be dismissed for lack of prosecution and failure to follow the court's orders if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendant's

16

motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendant's affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 30th day of January, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA