IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| ERIC BROWN, | |
|       Plaintiff, | CIVIL ACTION NO.: 5:15-cv-89 |
|    v. | |
| MARC OGE, | |
|       Defendant. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Oge's Motion for Summary Judgment, doc. 40, to which Plaintiff responded, doc. 42, and Defendant replied. Doc. 44. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment, **DISMISS with prejudice** Plaintiff's Complaint, and **DENY as moot** the remaining portions of Defendant's Motion. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

### BACKGROUND[1]

Plaintiff filed this action on November 5, 2015, while incarcerated at Ware State Prison ("WSP") in Waycross, Georgia, regarding events that occurred on August 31, 2015.[2] Doc. 1.

---

[1] The recited facts represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. See Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).

[2] Plaintiff originally listed the date of his injury as August 30, 2015; however, in a subsequent deposition, Plaintiff confirmed the date of injury as August 31, 2015. Doc. 41-3 at 40.

Plaintiff alleged an unknown correctional officer closed his cell door onto his hand, causing a significant hand injury. Id. at 5. Despite difficulties in identifying the correctional officer responsible, Plaintiff identified Defendant as the officer who injured his hand and amended his Complaint accordingly on December 22, 2016.[3] Doc. 29.

During discovery, Defendant gave a sworn declaration and deposed Plaintiff. Docs. 40-3, 40-4. Based on the record before the Court, the material facts are as follows: Around 9:00 p.m. on August 31, 2015, Defendant began walking through Plaintiff's dormitory, B-2, at WSP. Doc. 40-3 at 53. Another correctional officer with Defendant then directed the prisoners in dormitory B-2, including Plaintiff, to return to their cells for a count. Id. at 57–58. At that time, Plaintiff was watching TV and was not in his cell. Id. at 55. After the correctional officer instructed the prisoners to return to their cells, Plaintiff quickly went to get ice and water and then hurried to go back to his cell. Id. at 59. Defendant and another officer were closing each cell door and then counting the inmates in each cell to ensure that all prisoners were observed. Doc. 40-4 at 14. The dormitory consisted of two levels of cells; Defendant was shutting the cells on the bottom level, which included Plaintiff's cell, and another officer was shutting the cells on the top level. Id.

In the following moments, the parties' accounts slightly diverge. Defendant asserts he closed the doors to cells 1 through 9 before counting the inmates at each cell. Id. He then arrived at Plaintiff's cell, cell 10, before he "looked at the doorway, and did not see any portion of any inmate's body protruding into or through the doorway." Id. Defendant then swung

---

[3]   In his Amended Complaint, Plaintiff alluded to damages arising from the failure of medical personnel, specifically Meke Conteh, to treat Plaintiff's injury. Doc. 29 at 1–3. Plaintiff did add Conteh as a party to the case but failed to state any claim under § 1983 against Conteh. Accordingly, this Court ordered that any putative claims against Conteh be dismissed and that Defendant Oge remain as the sole Defendant in this case. Doc. 34. Therefore, only Plaintiff's claims against Defendant Oge are presently before the Court.

2

Plaintiff's cell door closed, releasing it about one-quarter of the way through its swing. Id. After releasing the door, Defendant saw Plaintiff's hand grasp the door jamb but was unable to grab the door in time, and the door closed on Plaintiff's hand. Id.

Plaintiff contends Defendant and the other officer closing the cell doors were moving quickly from door to door and slamming each cell door closed. Doc. 40-3 at 59. Plaintiff asserts that he rushed into his cell as Defendant was slamming the door closed and that as he entered, his hand trailed slightly behind him and got caught in the door. Id. at 60–61. Plaintiff states he did not actually see Defendant when he shut the door, nor did he recall how much force was normally required to shut his cell door. Id. at 48–49, 60–61. He further states he does not believe or have any evidence to support the claim that Defendant intended to shut his hand in the door. Id. at 62, 64. He does, however, believe Defendant intended to slam the door based on purported comments by Defendant that suggest he was upset at inmates for being slow in returning to their cells. Id. at 63. Plaintiff asserts that, after slamming his hand in the door, Defendant did not express any sympathy or concern, but rather stated that Plaintiff should not have been taking his time. Id. at 67.

As to exhaustion of administrative remedies, discovery revealed that Plaintiff submitted an initial grievance report to the Warden on the date of his injury, August 31, 2015. Doc. 40-3 at 118. On November 5, 2015, before receiving a response to grievance, Plaintiff signed and mailed his original Complaint in this action. One day later, on November 6, 2015, Plaintiff received the Warden's Grievance Response, denying Plaintiff's grievance. Id. at 119. On that same day, November 6, 2015, Plaintiff filed a Central Office Appeal. On April 4, 2016, Plaintiff received a response to the appeal stating that no further action was warranted. Id. at 121.

On October 17, 2017, Defendant filed a Motion for Summary Judgment, arguing that Plaintiff's claims against Defendant in his official capacity are barred by the Eleventh Amendment. Doc. 40-1 at 8–9. Regarding any claims asserted against Defendant in his individual capacity, Defendant argues Plaintiff's § 1983 claim fails because it is undisputed that Defendant did not intentionally close the door on Plaintiff's hand. Id. at 10–14. Even if there were a dispute about Defendant's intent, Defendant argues Plaintiff's individual-capacity claim fails under the doctrine of qualified immunity. Id. at 14. Finally, Defendant asserts the Court should dismiss this case because Plaintiff failed to exhaust administrative remedies prior to filing suit. Id. at 17–20.

Plaintiff filed a Response, asserting for the first time that Defendant could not have looked in his cell door because he was closing the doors too quickly and that the door to his cell drags on the floor such that "momentum would [not] carry it to close." Doc. 42 at 1. Defendant then filed a Reply, arguing that the Court should not consider these assertions, as they are contradicted by Plaintiff's previous sworn statements. Doc. 44.

## DISCUSSION

Defendant moves for summary judgment or, in the alternative, dismissal of Plaintiff's claims. As set forth below, I find that Plaintiff has failed to show a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law. I, therefore, **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment, as the undisputed facts show that Defendant did not violate Plaintiff's constitutional rights and Plaintiff failed to exhaust his available administrative remedies.

**I.     Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." See Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).

## II.     Plaintiff's Official Capacity Claim

Eleventh Amendment immunity bars Plaintiff's claim against Defendant in his official capacity.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendant is immune from suit under § 1983.  Id. at 71.  Here, the State of Georgia would be the party in interest in a suit against Defendant in his official capacity as a state officer, and, accordingly, the Eleventh Amendment makes him immune from suit.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for damages against Defendant in his official capacity; thus, the Court should **GRANT** this portion of Defendant's Motion and **DISMISS** Plaintiff's claims against Defendant in his official capacity.

## III.    Plaintiff's Individual-Capacity Claim

Plaintiff's sole claim before the Court is that Defendant, in his individual capacity, violated his Eighth Amendment rights by using excessive force when closing Plaintiff's cell door on his hand.  Doc. 31 at 10–11.  Specifically, the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain."  Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013).  However, to establish any Eighth Amendment violation, a plaintiff must provide "some proof that officials acted with specific intent."  Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999).  In particular, an excessive force claim requires a plaintiff to prove that "force was applied . . . maliciously and sadistically for the very purpose of causing harm."  Whitley v.

6

Albers, 475 U.S. 312, 320–21 (1986) (citations omitted). This is consistent with other sorts of claims under § 1983 which require a plaintiff to prove a specific state of mind by a defendant. Daniels v. Williams, 474 U.S. 327, 330 (1986) (noting that, while § 1983 has no independent state-of-mind requirement, racial discrimination claims require a showing of "invidious discriminatory purpose" and Eighth Amendment medical claims require a showing of "deliberate indifference.").

In this case, viewing the facts in the light most favorable to Plaintiff, Defendant intentionally slammed each inmate's cell door. However, nothing indicates Defendant specifically intended to injure Plaintiff.

To determine whether a defendant acted maliciously and sadistically, courts typically look to five factors outlined by the United States Supreme Court in Whitley v. Albers, 475 U.S. at 321. Campbell, 169 F.3d at 1375 (collecting all five factors mentioned in Whitley for evaluating excessive force claims). However, the Whitley factors cannot be applied where there is no evidence of the defendant's intent. Indeed, courts need not consider the Whitley factors unless there is some evidence that a defendant's use of force may have been intentional. See Gardner v. Mack, Case No: 12-0281, 2015 WL 877249, at *8–9 (S.D. Ala. Mar. 2, 2015) (granting summary judgment in favor of defendant on plaintiff's excessive force claim without employing the Whitley factors where all evidence indicated defendant negligently injured plaintiff rather than intentionally).

A successful Eighth Amendment claim in this case would require Plaintiff to show that Defendant intended to slam the door on Plaintiff's hand. See Campbell, 169 F.3d at 1362. Plaintiff has no evidence to support this claim and admitted as such during his deposition. Doc. 40-3, Brown Dep. at 62, 64.

> Q: Okay. Do you have any reason to know whether or not he actually saw that your hand was in the doorway when he closed the door?
>
> A: I'm hoping if he did see my hand, he wouldn't have slammed the door on my hand so. . . .
>
> Q: I would hope not too.
>
> A: Yeah.
>
> Q: Do you have any evidence to suggest that he knew your hand was there and closed the door anyway?
>
> A: No, I ain't got no evidence, no.
>
> Q: Okay. I mean it sounds to me—and just tell me if you think I'm being fair when I say this—that he probably didn't mean to do it, but it sounds more like it was an accident that it actually closed on you?
>
> A: I guess you could say that.

Id. at 64. Plaintiff has presented evidence, in the form of his deposition, that Defendant was angry when he was shutting the cell doors and that he was moving quickly from door to door. Id. at 63. However, even were the Court to consider Plaintiff's unsworn statements made in his Response, Plaintiff fails to provide any evidence, or even allege, that Defendant intentionally closed the door on Plaintiff's hand. At the very most, Plaintiff claims Defendant, upset at inmates for moving slowly, slammed cell doors without looking into them and forcefully closed each door rather than releasing them mid-swing.[4]  Doc. 42 at 3. While Defendant may have acted negligently, his actions do not evince a malicious and sadistic use of force.

Negligence alone cannot support an Eighth Amendment claim. Estelle v. Gamble, 429 U.S. 97, 105 (1976) ("An accident, although it may produce added anguish, is not on that basis

---

[4] These statements contradict Plaintiff's earlier sworn testimony during his deposition, where he stated he did not see Defendant close the door and could not recall how heavy his cell door was. Doc. 40-3 at 48–49, 60–61.

alone to be characterized as a wanton infliction of unnecessary pain."). Indeed, a claim under the Cruel and Unusual Punishments Clause requires conduct by a prison official that is "more than ordinary lack of due care for the prisoner's interests or safety." Fields v. Georgia, No. 6:18-CV-135, 2019 WL 5061259, at *3 (S.D. Ga. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 5068545 (S.D. Ga. Oct. 8, 2019) (citing to Farmer v. Brennan, 511 U.S. 825, 835 (1994); Whitley v. Albers, 475 U.S. 312, 319 (1986)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. Plaintiff's Complaint and deposition testimony describes an accident, and at most negligence, as opposed to the deliberate indifference required to support a § 1983 claim. See, e.g., Davidson v. Cannon, 474 U.S. 344, 347–48 (1986) ("[L]ack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent."). The evidence before the Court indicates that, at most, Defendant was negligent in closing the cell doors and reacted inconsiderately to Plaintiff's injury resulting from that negligence. This does not equate to a showing of malicious and sadistic force required for an Eighth Amendment claim. Accordingly, Plaintiff has failed to show a genuine issue of material fact to be considered at trial, and, therefore, I **RECOMMEND** the Court **GRANT** this portion of Defendant's Motion for Summary Judgment and **DISMISS** Plaintiff's Complaint. Doc. 40.

**IV.     Plaintiff's Failure to Exhaust**

Even if Plaintiff demonstrated a genuine dispute as to a fact material to his deliberate indifference claims, Defendant still would be entitled to summary judgment in his favor. Plaintiff failed to exhaust his administrative remedies for his excessive force claim because he filed a Complaint before completing the appeal of his grievance.

### A.     Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit"). Additionally, the Supreme Court has "held that the PLRA's [Prison Litigation Reform Act's] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' That mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance

with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. Doc. 40-7 at 9–25. This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. Id. at 14. An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." Id. Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender. Id. at 12. An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." Id. at 17. The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor. Id. at 16. The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator. Id.

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. Id. at 17. The warden has a period of 40 calendar days from the date the inmate gave his grievance to the counselor to deliver a decision to the inmate. An extension of 10 calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. Id. at 19. An inmate can file

an appeal with the Georgia Department of Corrections Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The inmate has seven calendar days in which to file this appeal. Id. at 21. The Commissioner has 100 calendar days after receipt to render a decision. Id. at 22.

### C. Plaintiff's Efforts at Exhaustion

Plaintiff did not exhaust all administrative remedies prior to filing this case. Plaintiff correctly followed prison procedures by submitting an Offender Grievance Form to the Warden on August 31, 2015. Doc. 40-3 at 118. However, Plaintiff filed this lawsuit on November 5, 2015, one day before receiving the Warden's response and submitting his appeal with the Central Office. Doc. 40-3 at 16; Doc. 40-7 at 30–31. Furthermore, Plaintiff filed his Complaint well in advance of the Central Office Appeal response, which was dated March 10, 2016 and delivered to Plaintiff on April 4, 2016. Doc. 40-7 at 32.

Plaintiff notes in his initial Complaint that he did not exhaust the appeals process prior to filing suit, marking "No" in response to the question: "Did you appeal any adverse decision to the highest level possible in the administrative procedure?". Doc. 1 at 4. Plaintiff's stated reason for not exhausting his appeal prior to filing was that "the appeal form was not given to me." Id. However, Plaintiff also stated in a later deposition that, "[I]f you don't like the response, they give you the appeal sheet right there and then." Doc. 40-3 at 98–99. Plaintiff was evidently aware, then, that he would be given the opportunity to appeal his grievance once the Warden's response had been returned to him. Despite this knowledge, Plaintiff filed his Complaint before receiving and appealing the Warden's response.

Though Plaintiff did eventually exhaust his administrative remedies, he failed to do so until after filing his Complaint, and accordingly, he failed to satisfy the exhaustion requirement of the PLRA. The Eleventh Circuit has "interpreted the term 'brought'—as used in section 1997e(a)—to mean 'the filing or commencement of a lawsuit, not . . . its continuation.'" Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000)). Plaintiff defends his failure to exhaust all administrative remedies prior to filing his Complaint by stating in his Response to Defendant's Motion for Summary Judgment that he "did try to go through remedies to the best of his knowing [sic]." Doc. 42 at 5. He also alleges "times/dates were mixed up due to the conduct of the administrative staff." Id. at 4. However, Plaintiff fails to elaborate or put forward any evidence as to these alleged clerical errors, and Plaintiff's familiarity or lack thereof with administrative procedures cannot excuse this failure to exhaust administrative remedies. Ross, 136 S. Ct. 1856.

Therefore, Plaintiff failed to exhaust his administrative remedies as to the events giving rise to his Complaint. Consequently, should the Court decline to dismiss Plaintiff's Complaint for his failure to put forward a dispute of material fact, the Court should **GRANT** this portion of Defendants' Motion for Summary Judgment and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.[5]

---

[5] The failure to exhaust one's administrative remedies generally warrants dismissal without prejudice. See, generally Bryant, 530 F.3d at 1379; Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998). However, in the instant case, it is an alternative ground for dismissal. The primary ground for dismissal is Plaintiff's failure to show a genuine issue of material fact which, because it is an adjudication on the merits, warrants dismissal with prejudice. Accordingly, I recommend dismissal with prejudice.

**V.     Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[6]  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

---

[6]     A certificate of appealability is not required in this § 1983 action.

**CONCLUSION**

For the forgoing reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion for Summary Judgment, **DISMISS with prejudice** Plaintiff's Complaint for his failure to establish a genuine dispute of material fact, and **DENY as moot** the remaining portions of Defendant's Motion for Summary Judgment.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of December, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA